# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00518-CV

---

**Willie Ersell McCulloch, III, Appellant**

**v.**

**Jeannie M. McCulloch and The State of Texas, Appellees**

---

**FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 15-1304-F425, THE HONORABLE WILLIAM C. KIRKENDALL, JUDGE PRESIDING**

---

## O P I N I O N

Appellant Willie Ersell McCulloch, III, seeks review of the trial court's judgment denying his request to modify child and spousal support. By five issues that we have reordered, Willie argues that the trial court erred by: (1) finding that no material and substantial change in circumstances had occurred since the parties' divorce; (2) not following statutory guidelines in setting child support; (3) allowing spousal maintenance to continue based on a finding of intentional unemployment; (4) finding that Willie was intentionally unemployed; and (5) denying Willie's motion for continuance. We affirm.

## I.    BACKGROUND

Willie and Jeannie M. McCulloch[1] had been married for almost twenty-three years when they divorced on August 27, 2019.  The final divorce decree provides, in relevant part, that the child of the marriage, T.R.M. (Tyler)[2] was disabled and that support for him should continue indefinitely, that Willie's "gross annual income . . . is at least $275,117.00," that "[t]he application of the percentage guidelines in this case would be unjust or inappropriate," that he was ordered to pay $4,500 per month in child support, that Jeannie was unable to earn sufficient income to provide for her minimum reasonable needs because of an incapacitating physical or mental disability, and that Jeannie was entitled to spousal maintenance in the amount of $4,585.28 per month for an indefinite amount of time.  The court also found that there was "credible evidence . . . that there is a history or pattern of child abuse and family violence committed by Willie."  The decree further detailed that the parties "entered into a Partial Agreement Incident to Divorce" and that the decree represented "a merger of that [agreement] and the orders of the court."

On October 31, 2019, Willie filed a petition to modify both of his support obligations.  On May 6, 2021, Willie was held in contempt for failing to comply with his child and spousal support obligations.  On July 3, 2021, the trial court entered a separate order finding

---

[1]  Because Willie and Jeannie share a surname, we refer to them by their given names for ease of reference.

[2]  To protect the child's privacy, we refer to him by a pseudonym.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

that Willie was intentionally unemployed and that there had been no material or substantial change in circumstances and denying Willie's motion to modify his support obligations.[3]

On October 27, 2022, the Office of the Attorney General (OAG) filed a motion to enforce Willie's child and spousal support obligations. Willie filed a counterpetition and again sought to modify his support obligations, alleging that there had been a material and substantial change in circumstances since the entry of the final decree of divorce. A final hearing was held on February 26, 2024, during which both Willie and Jeannie testified.

Willie testified that he had been diagnosed with schizophrenia, depression, anxiety, and bipolar disorder. However, Willie agreed that he had suffered from depression, anxiety, and bipolar disorder since 2005. He explained that his bipolar disorder had gotten "more severe," resulting in "more stress." He testified that "the highs are higher, the lows are lower" and that at its worst, his bipolar disorder is "very destructive to [his] life." For instance, Willie explained that sometimes he does not bathe unless his wife or mother forces him to and that during periods of mania, he tends to "spend [money] frivolously." He testified that he could not work because he had "crippling bipolar" disorder. None of Willie's medical records were admitted into evidence.

Willie testified that prior to the divorce proceedings, he worked as a computer engineer for companies such as "Dell, Hitachi, and Pure Storage." He acknowledged that he had "extensive experience in sales for data companies." However, Willie testified that he had not

---

[3] This order also granted Jeannie's tortious-interference and theft claims and ordered Willie to pay $299,940.27 in damages, including exemplary damages. Jeannie testified in the instant proceeding that the tortious-interference claim arose because Willie "destroyed the home" that was awarded to Jeannie in the divorce "and then he blocked all payments that [she] was making on the mortgage and put them in . . . a trust, and he was trying to foreclose." No one testified as to what happened to the mortgage payments placed in that trust.

3

held a job since 2018. He explained that he received funds from different short-term and long-term disability plans at various times in 2018, 2019, and 2020. However, he did not detail the amounts he received from these plans, what happened to those funds, or when the plans ended. A letter from the Social Security Administration (SSA) was admitted into evidence and indicates that Willie was determined to be disabled as of November 1, 2019. Willie explained that during the prior modification proceeding, he had testified that he had been approved for disability by the SSA, but the prior trial judge did not believe him. Willie also acknowledged that he first visited Dr. Flume,[4] one of the doctors who opined to the SSA that Willie was disabled, in September 2019, the month immediately following entry of the parties' final decree of divorce.

Willie testified that he told a different doctor in 2020 that there was a period of time during which he rarely left his parents' home.[5] However, on cross, he acknowledged that during that same period, he spent two days in Pensacola, Florida; three days in Gulf Breeze, Florida; two days in Roswell, New Mexico; two days in Denver, Colorado; and five days in Salida, Colorado. Willie agreed that in 2023, he filed his taxes for the years 2018, 2019, 2021, and 2022, and that he listed his address on his taxes as a P.O. Box in Colorado. Willie testified that he and his wife were living in Vail, Colorado in 2023, but could not recall the address of where he was living. He also did not explain when he and his wife moved to Colorado or why they did so, despite having limited financial resources. Willie testified that he and his wife were currently living with his mother in Austin, Texas.

---

[4] No first name appears in the record for Dr. Flume.

[5] Willie agreed that this period of time coincided with "the height of the pandemic in 2020."

4

Willie received a lump sum payment from the SSA in December 2022 for approximately $48,000. Another roughly $48,000 was garnished by the SSA to pay down Willie's child and spousal support obligations. Willie explained that when he received the $48,000 lump sum payment, he paid his mother $20,000, his wife $25,000, and used the remaining funds to hire his attorney in this proceeding. He agreed that he did not use any of the $48,000 he received to pay down his child or spousal support obligations.

Willie's monthly bank statements from 2023 were admitted into evidence. They reflect that, in addition to the roughly $48,000 lump sum received from SSA in December 2022, Willie also received an unexplained deposit in his bank account in the amount of $1,730 in January 2023. Although the letter from the Social Security Administration reflects that between December 2022 and November 2023, Willie received monthly disability benefits of $3,624.90 before garnishment, the bank records do not reflect any additional payments from the SSA until May 2023. Willie testified that he rarely left money in the bank account because he feared creditors would be able to reach that money. His bank records do not reflect any payments for rent, utilities, groceries, restaurants, or a phone plan. Instead, they reflect that he would typically withdraw any balance in the account at ATMs in various cities in either Texas or Colorado or that he would transfer the funds to third parties.

Jeannie testified that Willie had suffered from anxiety and depression throughout their marriage "and before" and from bipolar disorder since 2005. Jeannie also testified that Willie's mental-health diagnoses "[n]ever" affected his ability to work, even despite certain severe manifestations of their symptoms. For instance, Jeannie explained that in 2011, shortly after Willie had lost his job after an expected round of lay-offs, Willie phoned her, insisting that she come home and leave Tyler at a family friend's home. Jeannie felt that Willie sounded "off"

5

and she called in a welfare check. Jeannie testified, "They found him standing there . . . inside the house, and he had all of our family pictures from the whole house in a half circle, candles lit, and he was waiting for me, he claimed that it would be a murder-suicide." Jeannie testified that Willie voluntarily received in-patient services at the Austin State Hospital after this incident. But "two to three weeks" later, Willie had a new job, "making well over $200,000 a year." Jeannie testified that Willie would sometimes go off his medication because he "like[d] the mania" and felt it helped him be more successful at work. At the end of their marriage, in 2019, Jeannie testified that Willie was making "around $300,000." Jeannie testified that in addition to his lucrative career, Willie "has other companies that he . . . placed into [his current wife]'s name."

Jeannie also explained that she had reviewed certain records from Willie's medical history. According to Jeannie, prior to Willie's first appointment with Dr. Flume in September 2019, Willie sent an email to Dr. Flume and "asked him to write a letter to his company stating that he is unable to work due to disability." Jeannie also testified that Willie's medical records did not reflect a diagnosis of schizophrenia.

Jeannie testified that when she first served Willie with divorce paperwork, he called her and said, "You have until 7:00 a.m. to call off your attorney or I'm suddenly feeling a little depressed and bipolar. I'd hate for you to have to try to get a divorce with me disabled." Jeannie believed Willie was following through on this threat by repeatedly attempting to lower his support obligations, explaining:

> [Willie] takes a disability that he's always had and makes good on
> a threat that if I were to leave him and not stay in that situation,
> that I would pay the rest of my life with exactly what we're doing
> today, and being here proves that. We've now—this is the third

6

time that we have to go before a third judge and hear the same
thing exactly.

The trial court denied Willie's motion to modify and left his support obligations intact, found that "the circumstances of the child, a conservator, or other party affected by the order have NOT materially and substantially changed since the prior order," that Willie "is intentionally unemployed," and that Willie "appeared untruthful" while Jeannie "appeared truthful."[6]  This appeal followed.

## II.  MODIFICATION

By his first four issues, Willie argues that the trial court's denial of his requested modification was erroneous.

## A.  Standard of Review

An obligor may seek to modify a child or spousal support order if there has been a material and substantial change in the circumstances since the date of the order.  Tex. Fam. Code §§ 8.057(c), 156.401(a)(1).  The party seeking modification has the burden to demonstrate that there has been a material and substantial change.  *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied).  To demonstrate that such a change has occurred, "the petitioner must demonstrate what conditions existed at the time of the entry of the prior order as compared to the circumstances existing at the time of the hearing on the motion to modify."  *Id.* "It is left to the trial court's sound discretion to weigh all the relevant factors when deciding whether there has been a substantial and material change and whether that change warrants a

---

**6** By separate order, the trial court found Willie in contempt for failing to meet his support obligations, committed him to county jail for a period of 180 days, but suspended his commitment and placed him on community supervision for 120 months.  That order is not before us.

modification of child support, and we will not disturb the trial court's judgment absent a clear abuse of that discretion." *Downey v. Downey*, No. 03-12-00037-CV, 2014 WL 1362642, at *5 (Tex. App.—Austin Apr. 1, 2014, no pet.) (mem. op.).

Willie challenges the legal and factual sufficiency of the evidence to support the trial court's judgment. "In family-law cases, the abuse-of-discretion standard overlaps with traditional standards for reviewing the sufficiency of the evidence." *Udall v. Minns*, 730 S.W.3d 704, 726 (Tex. App.—Austin 2026, pet. denied). "Consequently, legal and factual insufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion." *Id.* When determining whether the trial court abused its discretion, we engage in a two-pronged inquiry, analyzing whether (1) the trial court had sufficient evidence upon which to exercise its discretion and (2) the trial court erred in its application of that discretion. *Id.* Traditional standards for legal- and factual-sufficiency review come into play with regard to the first question. *Id.* "Ultimately, we determine whether, based on the elicited evidence, the trial court made a reasonable decision." *Wallace v. Wallace*, 690 S.W.3d 718, 721 (Tex. App.—San Antonio 2024, no pet.).

## B. Material & Substantial Change in Circumstances

Willie contends that the trial court should have determined that there had been a material and substantial change in circumstances based on Willie's disability and his loss of employment. First, we must address the relevant timeframe for determining whether a material and substantial change in circumstances has occurred. Willie contends that the relevant timeframe begins with the entry of the final decree of divorce, whereas the OAG and Jeannie argue that it begins with the entry of the 2021 order. If a court simply denies a request to modify

support, the proper period of time to consider whether a material and substantial change in circumstances has occurred begins with the date the original support order was rendered, as a denial of a modification request merely continues the current support obligation. *See In re G.J.S.*, 940 S.W.2d 289, 292–93 (Tex. App.—San Antonio 1997, no writ) ("proper period of time" for determining whether "material and substantial change in circumstances" occurred "was from the date that the original child support order was rendered," not "from the date of the last order denying modification"); *In re J.D.D.*, No. 05-10-01488-CV, 2011 WL 5386370, at *3 (Tex. App.—Dallas Nov. 9, 2011, no pet.) (mem. op.). However, if the trial court modifies its original order, the correct timeline for review will begin with the newly modified support order. *See In re J.R.D.*, 169 S.W.3d 740, 743–44 (Tex. App.—Austin 2005, pet. denied). The question, then, is whether the trial court's finding in 2021 that Willie was intentionally unemployed constitutes a modification of the original support order. We need not decide this issue, though, because we conclude that even using the 2019 order as the beginning of our measuring stick, Willie failed to demonstrate a material and substantial change in circumstances.[7]

Willie contends that this case is similar to *In re A.A.T.*, where our sister court explained:

> While the trial court was free to assess Tellez's credibility as a witness, it was not free to give no effect to the undisputed evidence

---

[7] The OAG also argues that res judicata precludes Willie from successfully arguing that events predating the 2021 denial of modification, such as the SSA's determination that he is disabled, can be considered in determining whether a material and substantial change in circumstances has occurred. But neither Jeannie nor the OAG raised res judicata as an affirmative defense below. *See Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal Dist.*, 691 S.W.3d 890, 908 (Tex. 2024) ("[R]es judicata is an affirmative defense on the merits that is waived if not properly pleaded."). Nor was the issue tried by the parties' consent. Accordingly, we conclude that res judicata does not bar consideration of circumstances that occurred prior to the 2021 modification denial.

that Tellez had been determined to be disabled after the entry of the prior order, and that he was receiving SSI benefits for his disability; these facts, standing alone, demonstrated that Tellez had suffered a significant loss in his net monthly resources since the time of the child support order—from $1,303.56 to zero.

583 S.W.3d 914, 922 (Tex. App.—El Paso 2019, no pet.).

But the obligor in *A.A.T.* suffered a stroke following entry of the prior support order, resulting in a new, debilitating disability. *Id.* at 918. Here, it is undisputed that Willie's mental illnesses had lingered for decades. And, according to Jeannie, evidence about Willie's mental-health issues was admitted at the 2019 divorce hearing.

Instead, this case is similar to *Bolda v. Bolda*, in which the Fort Worth Court of Appeals held that the SSA's disability determination was not a material and substantial change in circumstances where the obligor "acknowledged that he had suffered from the same disease at the time of the divorce decree (although he maintained that it had worsened)." No. 02-18-00307-CV, 2019 WL 6334706, at *5 (Tex. App.—Fort Worth Nov. 27, 2019, no pet.) (mem. op.). Although Willie testified that his illnesses had worsened over time, the trial court was not obligated to (and clearly did not) credit his testimony and could have concluded that Willie's mental-health issues and any impact they may have had on his ability to work were an anticipated, rather than changed, circumstance. *See id.*; *see also Warren v. Ulatoski*, No. 03-15-00380-CV, 2016 WL 4269999, at *5 (Tex. App.—Austin Aug. 11, 2016, pet. denied) (mem. op.) ("Since Ulatoski's husband was active-duty military and thus subject to relocation, her move from California was contemplated by the parties at the time of the 2011 order.").

Moreover, as the movant, Willie bore the burden to prove that there had been a material and substantial change in circumstances. *See Zeifman*, 212 S.W.3d at 589. When we

review the sufficiency of the evidence for an issue on which the appellant bore the burden of proof, the evidence is legally insufficient only if the "evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The evidence will also be factually insufficient only if the lower court's finding "is against the great weight and preponderance of the evidence." *Id.* at 242.

"Without financial data to compare the present circumstances of the parties with their financial circumstances at the time of the entry of the maintenance order, there can be no showing of a substantial change." *In re Marriage of Lendman*, 170 S.W.3d 894, 900 (Tex. App.—Texarkana 2005, no pet.); *see In re C.H.C.*, 392 S.W.3d 347, 349 (Tex. App.—Dallas 2013, no pet.) (citing *Hammond v. Hammond*, 898 S.W.2d 406, 407–08 (Tex. App.—Fort Worth 1995, no writ)). Willie testified that he had not held a job since 2018, prior to the final hearing on the parties' divorce. Although the trial court made a finding that Willie's gross annual income was approximately $275,000 at the time of final decree of divorce, and Willie agreed that he was earning around $250,000 at the time, Willie did not explicitly testify as to where that money came from. Though he agreed that he received short-term disability in 2019, he did not provide any detail as to how much those payments were or whether he was receiving them at the time of the final hearing. For her part, Jeannie testified that Willie had taken steps to hide certain income-generating assets, such as by placing them in his wife's name or by changing his business's name after it was awarded to him in the divorce.

Willie also did not detail what his expenses were in 2019 as compared to present-day, where his only expenses appear to be child- and spousal-support payments. *See Melton v. Toomey*, 350 S.W.3d 235, 239 (Tex. App.—San Antonio 2011, no pet.) (considering movant's failure to introduce evidence of party's expenses in reviewing whether material and

11

substantial change in circumstances had occurred). Additionally, the record contains very little evidence concerning Jeannie's or Tyler's current or historical financial circumstances. *See In re C.C.J.*, 244 S.W.3d 911, 918 (Tex. App.—Dallas 2008, no pet.) (although father presented evidence concerning change in his financial circumstances, trial court abused discretion by determining that material and substantial change in circumstances occurred because "there is no evidence of the financial circumstances of Mother and the children").

Thus, bearing in mind that Willie bore the burden of proof, we cannot conclude that the trial court's determination that no material and substantial change in circumstances occurred was incorrect as a matter of law or was so against the great weight and preponderance of the evidence as to be clearly unjust. *See Dow Chem. Co.*, 46 S.W.3d at 241–42. Accordingly, based on the record before us, we conclude that the trial court did not abuse its discretion in determining that there had been no material and substantial change since the entry of the prior order.

Willie also argues that the current child-support order and spousal-support order depart from the statutory guidelines. We note that Willie did not seek modification on this basis below. *See* Tex. R. App. P. 33.1(a). In any event, "[t]he trial court's consideration of the child support guidelines in a modification proceeding is discretionary, not mandatory." *Clark v. Binder*, No. 03-22-00631-CV, 2024 WL 2868277, at *2 (Tex. App.—Austin June 7, 2024, no pet.) (mem. op.). And "a child support order not in compliance with guidelines does not in and of itself establish a material and substantial change in circumstances warranting modification." *Melton*, 350 S.W.3d at 238; *In re J.Z.*, No. 02-17-00127-CV, 2018 WL 5289353, at *6 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (mem. op.) ("If Father did not establish a material or substantial change in circumstances, he was not entitled to a modification, regardless of whether

12

the previously-ordered support still complied with the guidelines at the time of the modification hearing."). Thus, regardless of whether its child support award complied with the statutory guidelines, the trial court was not required to revisit the amount of its award, given that it found no material and substantial change in circumstances occurred. *See Clark*, 2024 WL 2868277, at *2.

As for spousal support, Willie argues that the trial court may not set a party's spousal maintenance obligation based on imputed income extrapolated from a finding of intentional unemployment. Indeed, we recently held that spousal maintenance must be set based on the obligor's gross income, not their earning potential. *Harwood v. Harwood*, No. 03-23-00455-CV, 2025 WL 2233982, at *8 (Tex. App.—Austin Aug. 6, 2025, no pet.). But, again, we do not know the basis for the trial court's 2019 finding that Willie was earning $275,000. Given that Willie testified that he was unemployed at the time the trial court made that finding, it may well have based its original spousal maintenance award on earning potential, rather than actual income.

But even if the trial court did not base spousal maintenance on earning potential at that time, it certainly did so during the 2021 modification proceeding, when it found that Willie was intentionally unemployed but permitted spousal maintenance to continue. "Texas courts have repeatedly held that a party must raise an argument that a trial court violated the family code in ordering maintenance in a direct challenge to the divorce decree and not through a collateral attack." *Keller v. Keller*, No. 02-17-00466-CV, 2018 WL 4782162, at *4 (Tex. App.—Fort Worth Oct. 4, 2018, no pet.) (mem. op.) (collecting cases). The time to challenge a spousal maintenance award based on earning potential was on direct appeal from the 2019 divorce decree or, depending on the record, the 2021 modification proceeding. Having failed to do so, Willie

13

cannot now collaterally attack the spousal-maintenance award on the basis that it does not comply with the family code. Willie's other challenge to the spousal-maintenance award—i.e., that the trial court failed to properly analyze the statutory factors giving rise to an initial award of spousal maintenance, *see* Tex. Fam. Code § 8.052—also fails for this same reason.

We overrule Willie's first three issues.

## C.     Intentional Unemployment

Willie also challenges the trial court's finding that he is intentionally unemployed. When the trial court has previously made a finding that the obligor is intentionally unemployed, it is the obligor's burden to prove that there has been a material and substantial change in his employment status and earning potential in a subsequent proceeding. *In re J.D.D.*, 242 S.W.3d 916, 921 (Tex. App.—Dallas 2008, pet. denied). The trial court explicitly found that Willie was unemployed during the 2021 modification proceeding. Willie presented no evidence that his employment history or capabilities had changed since that proceeding. Accordingly, we conclude that the trial court did not abuse its discretion in finding that Willie was intentionally unemployed. We overrule Willie's fourth issue.

### III.     MOTION FOR CONTINUANCE

By his final issue, Willie argues that the trial court erred in denying his motion for a continuance, as it should have waited for a decision by the SSA regarding Tyler's eligibility for benefits. On February 21, 2024, Willie moved for a continuance, arguing that additional discovery was needed and that a determination of Tyler's eligibility for SSA payments—either by virtue of Tyler's own disability or Willie's—was still outstanding. At the final hearing,

Jeannie testified that she had recently applied for benefits on Tyler's behalf but was still waiting for a decision.

"The granting or denial of a motion for continuance is within the trial court's sound discretion." *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). Thus, the trial court's action on a motion for continuance "will not be disturbed unless the record discloses a clear abuse of discretion." *Id.*; *cf. Fritsch v. J. M. Eng. Truck Line*, 246 S.W.2d 856, 858 (Tex. 1952) ("There is nothing in the rules on continuance requiring the granting of a first motion merely because it is in statutory form and is not controverted by affidavit of the opposite party."). Willie contends that his motion was similar to a motion seeking a continuance based on the need for additional discovery. In such cases, courts consider the following nonexclusive factors to determine whether the trial court abused its discretion in denying the motion: (1) the length of time the case has been on file; (2) the materiality and purpose of the discovery sought; and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).

This case had been on file with the trial court since October 27, 2022, and Willie filed his motion for continuance on February 21, 2024. Although the SSA's benefit decision for Tyler could entitle Willie to an offset of his child-support payments, *see* Tex. Fam. Code § 157.009, there is nothing in the record to indicate how long the SSA would take to reach a final decision or to begin providing benefits.[8] Accordingly, we conclude that the trial court did not abuse its discretion by denying Willie's motion for a continuance, and we overrule Willie's final issue.

---

[8] In Willie's case, although he was found to be disabled as of November 2019, he did not start receiving SSA benefits until over three years after the initial disability determination. There is nothing to indicate that the SSA was expediting the application made on Tyler's behalf.

## IV.    CONCLUSION

We affirm the trial court's judgment denying Willie's motion to modify.

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed:   June 30, 2026